UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| HARLAN GARCIA, | ) | CIV. 10-5033 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |

## INTRODUCTION

Petitioner Harlan Garcia, a federal prisoner at the Federal Correctional Institution at Florence, Colorado, has filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The government has filed a response in opposition to that motion. Mr. Garcia's motion was referred to this magistrate judge by the district judge for a report and recommendation. For the reasons discussed more fully below, this court recommends that an evidentiary hearing be scheduled in order to hear evidence to resolve the issues raised in Mr. Garcia's motion.

## FACTS AND PROCEDURAL BACKGROUND

The United States government indicted Mr. Garcia on October 18, 2006. Count I of the indictment charged Mr. Garcia with conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846.

See CR 06-50079, Docket No. 1, Count I (D.S.D.). The conspiracy was alleged to have taken place in the District of South Dakota and elsewhere and to have begun no later than 2004, continuing through the date of the indictment. Id. Michelle Lucero was a named co-defendant and co-conspirator, although the government alleged that there were other co-conspirators not named in the indictment. Id. The indictment also charged Mr. Garcia with distribution of 50 grams or more of methamphetamine in Rapid City, South Dakota, on two separate occasions: February, 2005, and June to July, 2005. Id. at Counts II and IV.

Mr. Garcia made his initial appearance on this indictment on August 29, 2007.[1] Attorney Jody Harold Speck was appointed to represent Mr. Garcia. See id. at Docket 27.[2] Mr. Garcia availed himself to his right to a jury trial and his case was tried February 12-14, 2008. Mr. Garcia testified on his own behalf at the trial, admitting that he participated in the conspiracy, but characterizing himself as primarily a user of methamphetamine rather than a dealer and minimizing his participation in the conspiracy. Three cooperating

---

[1] Mr. Garcia was, at the time, in custody in a state prison in Colorado. The government brought about Mr. Garcia's appearance on the federal charges through a writ of habeas corpus ad prosequendum. See CR 06-50079, Docket No. 22, 23 (D.S.D.).

[2] Initially attorney Timothy Rensch was appointed to represent Mr. Garcia, but Mr. Rensch had to immediately withdraw due to the discovery of a conflict of interest in his representation of Mr. Garcia.

co-conspirators testified on behalf of the government. At the close of trial, the government dismissed count II of the indictment against Mr. Garcia, leaving Mr. Garcia charged with only count I, the conspiracy count, and count IV, the distribution count from June or July, 2005. Id. at Docket 77. The jury returned a verdict of guilty as to both of the remaining counts. Id. at 78.

On May 14, 2008, the district court sentenced Mr. Garcia. See id. at Docket No. 101. The court sentenced Mr. Garcia to 135 months imprisonment on count I, and 60 months imprisonment on count IV, both sentences to run concurrently.[3]

Thereafter, Mr. Garcia appealed to the Eighth Circuit. Id. at 102. He raised three issues on appeal. First, whether the district court had erred in instructing the jury. Second, whether the district court erred in denying Mr. Garcia's motion for judgment of acquittal. And third, whether the district court erred in denying his request for disclosure of the presentence investigation reports of two government witnesses on the basis that they may contain exculpatory material or impeachment information. See id. at Docket 115, page 1.

As to the first two issues, the Eighth Circuit affirmed the district court. Id. at 8-17. As to the third issue, the court remanded without reversing,

---

[3]The court also imposed five years of supervised release as to each count of conviction, both terms to run concurrently. See CR 06-50079 at Docket No. 101.

3

directing the district court to conduct an *in camera* review of the presentence investigation reports of the two government witnesses to determine whether the documents contained exculpatory or impeachment evidence.  Id. at 7.  The appellate court had indicated that, if *in camera* review revealed the presence of exculpatory information, the district court was empowered to vacate Mr. Garcia's conviction, order disclosure of the report(s), and grant Mr. Garcia a new trial.  Id. at 8.  The Eighth Circuit issued its mandate on May 8, 2009.  Id. at Docket No. 118.

Upon remand and prior to the appellate court's issuance of its mandate, on April 24, 2009, the district court entered a sealed order, to which was appended the presentence investigation reports of the two witnesses in question.  See id. at Docket No. 117.  Because Mr. Garcia's conviction was not vacated and no new trial was ordered, one may infer that the district court found no exculpatory or impeaching information in either of the two presentence investigation reports.

Mr. Garcia thereafter filed the instant motion on May 7, 2010.[4] In his motion, Mr. Garcia asserts that he was deprived of the right to effective assistance of counsel under the Sixth Amendment to the United States Constitution during his original proceedings before the district court. He raises two issues: (1) that Mr. Speck failed to render effective assistance of counsel in advising Mr. Garcia about a plea offer made to him by the government; and (2) that Mr. Speck was ineffective for failing to advise Mr. Garcia that he could plead guilty without benefit of a plea agreement with the government. The government resists Mr. Garcia's request for habeas relief.

## DISCUSSION

**A.  Legal Standard Applicable to Ineffective Assistance Claims**

The Sixth Amendment of the Constitution of the United States affords a criminal defendant with the right to assistance of counsel. U.S. Const. amend. VI. The Supreme Court "has recognized that 'the right to counsel is the right to effective assistance of counsel.'" Strickland v. Washington, 466 U.S. 668, 698

---

[4]The court notes that Mr. Garcia's motion is timely. Under 28 U.S.C. § 2255(f), a federal prisoner must file a motion to vacate, set aside or correct a sentence within one year from the date that the judgment in his case became final. Where a prisoner pursues a direct appeal and does not seek review by the United States Supreme Court, the course of action followed by Mr. Garcia in this case, his judgment becomes final upon the expiration of the 90-day period allotted for filing a petition for certiorari to the United States Supreme Court. See Clay v. United States, 537 U.S. 522, 527 (2003). Here, Mr. Garcia's 90-day period expired on August 6, 2009. Therefore, under § 2255(f), he had until August 6, 2010, to file his motion to vacate, set aside, or correct his sentence. He acted well within that time frame.

(1984) (citing McMann v. Richardson, 397 U.S. 759, 771, n.14 (1970)). Strickland is the benchmark case for determining if counsel's assistance was so defective as to violate a criminal defendant's Sixth Amendment rights and require reversal of a conviction. Id. at 687. "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. The defendant must also show that counsel's unreasonable errors or deficiencies prejudiced the defense and affected the judgment. Id. at 691. The defendant must show, "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695. In sum, a defendant must satisfy the following two-prong test. Id. at 687.

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Id.

"There is a presumption that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all

significant decisions in the exercise of professional judgment." Hall v. Luebbers, 296 F.3d 685, 692 (8th Cir. 2002). It is the petitioner's burden to overcome this presumption, and a "petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test." Id. Judicial scrutiny of attorney performance is highly deferential, with a strong presumption that counsel's conduct falls within the range of reasonable professional conduct. Strickland, 466 U.S. at 698.

**B.  Whether Mr. Speck's Conduct Fell Below Professional Standards**

The posture of this case currently is that all of Mr. Garcia's claims are presented in his pleadings. No evidentiary hearing has been held. The government concedes that the first prong of the Strickland analysis, whether Mr. Speck's advice with regard to the possibility of Mr. Garcia entering a guilty plea (either with or without benefit of an agreement with the government), cannot be determined without taking evidence. Hence, because the government concedes that this issue may not be resolved as a matter of law based on the pleadings alone, the court makes no determination of this issue at this juncture of the case.

**C.  Whether Mr. Garcia Can Demonstrate that he was Prejudiced by Mr. Speck's Ineffectiveness**

However, the government argues that Mr. Garcia must also prove the prejudice prong of the Strickland test and that Mr. Garcia cannot prove this prong. Because the government argues that Mr. Garcia cannot prove prejudice

7

as a matter of law, the government urges the court to dismiss Mr. Garcia's motion on the pleadings alone.  See Strickland, 466 U.S. at 697 (the court need not address both prongs of the Strickland test if petitioner makes an insufficient showing on one of the prongs); Kingsberry v. United States, 202 F.3d 1030, 1032 (8th Cir. 2000).

"A prisoner is entitled to an evidentiary hearing on a section 2255 motion unless the motion, files and records of the case conclusively show that the prisoner is not entitled to relief."  Kingsberry, 202 F.3d at 1032; Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995) (both citing 28 U.S.C. § 2255 and Voytik v. United States, 778 F.2d 1306, 1308 (8th Cir. 1985). "Accordingly, a petition can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact."  Engelen, 68 F.3d at 240 (citing United States v. Rodriguez Rodriguez, 929 F.2d 747, 749-50 (1st Cir. 1991); Holloway v. United States, 960 F.2d 1348, 1358 (8th Cir. 1992); Larson v. United States, 905 F.2d 218,

220-21 (8th Cir. 1990); Smith v. United States, 618 F.2d 507, 510 (8th Cir. 1980); Voytik, 778 F.2d at 1308).[5]

In the context of a habeas claim alleging ineffective assistance of counsel for failure to advise the petitioner to enter into a plea agreement, the habeas petitioner may satisfy the prejudice prong of Strickland by showing four elements: (1) that the government formally made a plea offer to the petitioner; (2) that, had the petitioner received effective assistance of counsel, he would have accepted the plea offer; (3) that the plea bargain would have resulted in a lesser sentence; and (4) that the petitioner was willing and capable of performing any preconditions of the plea agreement. Kingsberry, 202 F.3d at 1032; Engelen, 68 F.3d at 241; United States v. Ayd, 25 F.3d 624, 626-27 (8th cir. 1994); Wanatee v. Ault, 101 F. Supp. 2d 1189, 1199-1214 (N.D. Iowa 2000), aff'd., 259 F.3d 700, 703-04 (8th Cir. 2001).

In Engelen, the government offered the petitioner a plea agreement, but the petitioner chose to avail himself of his right to a jury trial. Engelen, 68 F.3d at 240. Following that trial, he was convicted of 11 of the 15 counts

---

[5]The habeas cases cited by the Engelen court are consistent with more recent law that has established the standard by which motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(b)(6) are judged in all civil cases. See Ashcroft v. Iqbal, ___ U.S. —, 129 S. Ct. 1937, 1949 (2009); and Twombly v. Bell, 550 U.S. 544, 555 (2007) (both holding that, in evaluating motions under Rule 12(b)(6), courts should accept as true only well-pleaded facts, and should reject conclusory statements of fact, reject statements of law, and reject facts that, though well-pleaded, are not "plausible").

contained in the indictment.  Id. at 239-40.  The parties did not agree on what sentence Engelen would have received under the rejected plea agreement, but they did agree that the agreement would have resulted in a conviction on a single count with the remaining 14 counts being dismissed by the government.  Id. at 240.

After Engelen's conviction, he filed a motion pursuant to § 2255 alleging that his counsel was ineffective in failing to inform him (1) as to the United States Sentencing Guidelines provisions, (2) as to the application of a statutory mandatory minimum sentence in his case, and (3) of the advantages of accepting the proffered plea agreement.  Id.  The district court denied Engelen's motion because he had not even alleged that he would have accepted the plea agreement absent counsel's malfeasance.  Id. at 241.  Instead, the record reflected that Engelen rejected the plea agreement because he steadfastly maintained his innocence before, during, and after the trial.  Id.  Thus, in the face of such pleadings, the Eighth Circuit affirmed the district court's dismissal of Engelen's petition without holding an evidentiary hearing.  Id.

In the Kingsberry case, the court rejected the petitioner's habeas claim on the pleadings alone because the petitioner's assertion that he would have accepted the plea agreement were in stark contrast to his trial attorney's assertions to the contrary and the court rejected Kingsberry's affidavit as

conclusory and self-serving and, hence, not credible.  Kingsberry, 202 F.3d at 1033.

Here, the government relies on the Engelen decision in support of its assertion that this court should dismiss Mr. Garcia's § 2255 motion without taking evidence.  However, the allegations in Mr. Garcia's petition stand in stark contrast to the allegations in Engelen's pleadings.  Mr. Garcia clearly and unequivocally states that, had his attorney properly advised him regarding the proffered plea agreement[6] and the United States Sentencing Guidelines calculation, "he would have accepted the plea offer in lieu of proceeding to trial."  See Docket No. 1, at page 5.  Conversely, Engelen never indicated, before, during, or after trial, that he would have been willing to plead guilty.  Engelen, 68 F.3d at 241.

Also, in this case, Mr. Garcia's trial attorney has indicated through a sworn statement that on numerous occasions, Mr. Garcia expressed the hope

---

[6]There were actually two written plea offers made by the government to Mr. Garcia.  The first would have required Mr. Garcia to plead guilty to the conspiracy offense, which carried a ten-year mandatory minimum sentence.  See Docket 1-5.  Mr. Garcia does not allege in the instant motion that he would have agreed to accept this first plea offer.  Rather, it is Mr. Garcia's averment that the second written plea offer sent to him by the government *would* have been accepted by him had he received effective assistance from Jody Speck.  See Second Written Plea Offer at Docket 1-6.  That plea offer would have allowed Mr. Garcia to plead to a single distribution count, which carried with it a mandatory minimum sentence of only five years.  Id.  Thus, the court discusses only the second plea offer as that is the one upon which Mr. Garcia premises his habeas claim.

of resolving his case through a plea agreement instead of going to trial. See Docket No. 1-4, page 1. In the Engelen case, Engelen's attorneys filed affidavits that they encouraged Engelen to enter into the proffered plea agreement, but that Engelen refused to consider it, asserting his innocence. Engelen, 68 F.3d at 240.

Finally, Mr. Garcia's conduct in and around the time of his trial is not inconsistent with his assertions made in the instant motion. At trial, Mr. Garcia did not assert that he was actually innocent as Engelen did. Rather, Mr. Garcia testified at trial that he was primarily a user of methamphetamine and admitted his participation in the conspiracy, but tried to minimize his role in that crime. Thus, this case is unlike those in which the court rejected a habeas petitioner's conclusory and self-serving affidavits about whether he would have accepted a plea offer where the petitioner's conduct at trial was contrary to his habeas averments. Kingsberry, 202 F.3d at 1033; Engelen, 68 F.3d at 240; Wanatee, 101 F. Supp. 2d at 1206.

In the Wanatee case, the petitioner had averred that, had be received effective assistance of counsel with regard to a plea offer that was made, he would have accepted the plea offer and that he would have received a lesser sentence had he done so. Wanatee v. Ault, 39 F. Supp. 2d 1164 (N.D. Iowa 1999). The petitioner's averment was supported by his trial attorney's affidavit admitting that he failed to properly advise Wanatee about the charges and the

potential sentences he faced if he proceeded to trial.  Id.  Under pleadings like these, the district court held that the petitioner was entitled to an evidentiary hearing on his claims.  Id.

In Mr. Garcia's case, his pleadings, including his own statements in his petition and the affidavit of his trial attorney establish that the government formally made a written plea offer to Mr. Garcia.  See Docket No. 1-6.  The affidavit of Mr. Speck establishes further that he made a mistake in calculating Mr. Garcia's criminal history category under the USSG, believing that Mr. Garcia was in category IV or V, when in fact Mr. Garcia was in criminal history category III.  See Docket No. 1-4 at pages 3-6.  This mistake on Mr. Speck's part resulted in Mr. Speck erroneously advising Mr. Garcia that the difference in his sentence if he entered into the plea agreement as opposed to availing himself of a jury trial was minimal.  Id.  In fact, the difference between the plea agreement, which would have resulted in a USSG range of 63 to 78 months, and the sentence post-trial of 135 months, was substantial.

In addition, Mr. Garcia avers (and is supported by his trial attorney's affidavit) that if he had pleaded guilty, whether pursuant to a plea agreement or simply on his own, he would have received three points downward adjustment under the USSG for acceptance of responsibility.  Post-trial, he was

denied these three points.[7]  Thus, Mr. Garcia argues that even if his criminal history category and every other element of his USSG calculation remained the same under a plea or after a jury trial, he would at the very least have been given credit for acceptance of responsibility and would have received a lesser sentence by 14 months.

The government never takes issue with Mr. Garcia's pleadings which aver that a plea agreement was offered or that his sentence would have been lower had he accepted the plea offer.  These averments by Mr. Garcia are specific, detailed, well-pleaded, and supported not only by Mr. Garcia's own statements, which the court acknowledges are in his own interest, but they are also supported by his trail attorney's affidavit.  Thus, Mr. Garcia's case is distinguishable from those cases dispensed with on the pleadings where the court found only the petitioner's conclusory and self-serving averment.  Furthermore, the court finds that Mr. Garcia's pleadings, including his trial attorney's affidavit, are not inconsistent with the defense he presented at his trial.  Again, this leads the court to conclude that Mr. Garcia's pleadings cannot be rejected out of hand as lacking plausibility.

The final issue, whether Mr. Garcia was ready and able to perform any preconditions of the plea agreement, is not addressed by either party.

---

[7]In fact, the district court added two points for perjury, finding that Mr. Garcia had lied when he testified at trial.

However, the plea offer was made in writing and has been supplied to this court for review as an attachment to Mr. Speck's affidavit. That plea offer was not conditioned on Mr. Garcia cooperating with the government, although Mr. Speck had previously told the government that Mr. Garcia would be willing to do so. See Docket No. 1-4, and 1-6. Therefore, the court finds that the fourth condition, whether Mr. Garcia was able and willing to perform preconditions to the plea agreement, is not applicable in this case because there were no such preconditions.

The court concludes that Mr. Garcia's motion cannot be dismissed on the pleadings alone. Wanatee, 39 F. Supp. 2d 1164; 101 F. Supp. 1189; 259 F.3d 700. Mr. Garcia has established the necessary predicate, through his pleadings, to establish prejudice under Strickland. Furthermore, there are no grounds apparent to the court to reject those pleadings. They are specific, detailed, not conclusory, and not inherently incredible. Engelen, 68 F.3d at 240. Finally, the government concedes that the other Strickland prong, the question whether Mr. Speck's assistance fell below reasonable professional standards, is not capable of resolution on the pleadings alone. Accordingly, this court recommends that an evidentiary hearing be held on the two claims for habeas relief raised by Mr. Garcia in his petition.

## CONCLUSION

The court recommends that an evidentiary hearing be held on Mr. Garcia's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. If the district court adopts this court's recommendation, an appointment of counsel will be made for Mr. Garcia for purposes of the evidentiary hearing. Green v. United States, 262 F.3d 715, 716 (8th Cir. 2001); see also Rules Governing § 2254 Cases, Rule 8(c), 28 U.S.C.A. foll. § 2254 (habeas petitioner entitled to counsel if an evidentiary hearing is held).

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require *de novo* review by the district court. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

Dated this 6th day of October, 2010.

BY THE COURT:

/s/ *Veronica L. Duffy*
VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE